1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8   VICTOR OVCHINNIKOV,

9                          Petitioner,

10        v.

11   NEIL CLARK, et al.,

12                          Respondents.

13

CASE NO.  C07-1428-MJP-JPD

REPORT AND RECOMMENDATION

14   I.  INTRODUCTION AND SUMMARY CONCLUSION

15        Petitioner Victor Ovchinnikov, proceeding through counsel, has filed a Petition for Writ

16   of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging his detention by the U.S.

17   Immigration and Customs Enforcement pending his removal proceedings.  (Dkt. #1).  Petitioner

18   argues that he is entitled to release from detention because his removal is not likely to occur in

19   the reasonably foreseeable future.  Respondents have filed a Return and Motion to Dismiss,

20   arguing that because petitioner was convicted of an aggravated felony and his order of removal

21   is not yet final, his detention is mandated by Section 236(c) of the Immigration and Nationality

22   Act ("INA"), 8 U.S.C. § 1226(c), and is not indefinite.  (Dkt. #7).

23        Having carefully reviewed the entire record, I recommend that petitioner's habeas

24   petition (Dkt. #1) be DENIED and respondents' motion to dismiss (Dkt. #7) be GRANTED.

25

REPORT AND RECOMMENDATION
PAGE – 1

26

II.  BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Brazil who entered the United States on or about August 31, 1963, as a lawful permanent resident.  (Dkt. #9 at L5).  On February 6, 2006, petitioner pled guilty to four counts of Theft in the First Degree, and one count of Unauthorized Use of a Vehicle.  Petitioner was ordered to pay restitution in the amount of $23,383.53, and was sentenced to serve thirteen months with the Oregon State Department of Corrections, followed by 24 months supervision.  (Dkt. #9 at L34-41).

On June 14, 2006, ICE issued a Notice to Appear, charging petitioner with removability from the United States under INA § 237(a)(2)(A)(iii), for having been convicted of an aggravated felony as defined in INA § 101(a)(43)(G), relating to a theft offense for which the term of imprisonment is at least one year.  (Dkt. #9 at L13-15).  On February 27, 2007, petitioner was released from state custody on probation, and was transferred directly into ICE custody.  (Dkt. #9 at L21, R29).  ICE served petitioner with a Notice of Custody Determination, indicating that he would remain detained and "may not request review of this [custody] determination by an immigration judge because the Immigration and Nationality Act prohibits [his] release from custody."  (Dkt. #9 at L21).  Nevertheless, petitioner requested review of this custody determination by an Immigration Judge ("IJ").  *Id.*

On March 23, 2007, petitioner appeared pro se at a master calendar hearing before an IJ.  (Dkt. #9 at L44).  While it is not clear why from the Administrative Record, the IJ reset proceedings for April 24, 2007.  *Id.*  On April 24, 2007, petitioner appeared pro se at his reset master calendar hearing, and the IJ again reset proceedings for May 1, 2007.  (Dkt. #9 at L45).  On May 1, 2007, petitioner again appeared pro se at his reset master calendar hearing, and the IJ reset proceedings for another master calendar and bond hearing on May 8, 2007.  (Dkt. #9 at

REPORT AND RECOMMENDATION
PAGE – 2

L46).

On May 8, 2007, petitioner appeared with counsel at his reset master calendar hearing, and admitted that he had been convicted of theft in the first degree, but contested his removability on the issue of whether his conviction constituted an aggravated felony under INA § 101(a)(43)(G).  (Dkt. #9 at L226-29.  The IJ found that petitioner's February 6, 2007, conviction was an aggravated felony as defined by INA § 101(a)(43)(g), and thus found that petitioner was removable as charged.  *Id.*  Petitioner's counsel inquired as to how to preserve the issue of contested removability for further review, and the IJ suggested that counsel file a Motion for Reconsideration.  (Dkt. #9 at L173).  Petitioner withdrew his request for a bond redetermination and no further action was taken.  (Dkt. #9 at L49).  The IJ reset proceedings for another master calendar hearing on May 22, 2007, for the filing of petitioner's Form I-589 Application for Asylum and for Withholding of Removal.  (Dkt. #9 at L50).

On May 22, 2007, petitioner appeared with counsel for his reset master calendar hearing and submitted his Form I-589 Application for Asylum and for Withholding of Removal.  (Dkt. #9 at L51-61).  The IJ ordered that petitioner's counsel file a Motion for Reconsideration by June 9, 2007, and reset the matter for another master calendar hearing on June 19, 2007.  (Dkt. #9 at L-61, L172).

On May 31, 2007, petitioner submitted a second request for a bond redetermination hearing.  (Dkt. #9 at L62-99).  On June 1, 2007, appeared for his bond redetermination hearing before an IJ, but again withdrew his request for a bond redetermination.  (Dkt. #9 at L100).  The IJ revised the briefing schedule for petitioner's Motion for Reconsideration.  (Dkt. #9 at L151).  On June 4, 2007, petitioner submitted a Motion for Reconsideration, and respondents submitted their reply on June 18, 2007.  (Dkt. #9 at L161-75, L158-60).

REPORT AND RECOMMENDATION
PAGE – 3

On June 19, 2007, petitioner appeared with counsel at his reset master calendar hearing, and the IJ set an individual hearing for September 20, 2007, on petitioner's Application for Asylum and Withholding of Removal.  (Dkt. #9 at L212, L225).

On July 12, 2007, the IJ denied petitioner's request for reconsideration, finding that petitioner's February 6, 2006 theft conviction constituted an aggravated felony under INA § 101(a)(43)(g).  (Dkt. #9 at L226-9).

On August 1, 2007, petitioner submitted a Request for Expedited Hearing, indicating that he wanted to withdraw his Application for Asylum and Withholding of Removal, and take a final order of removal.  (Dkt. #9 at L224-5).  On August 3, 2007, petitioner appeared at his expedited master calendar hearing with counsel, and the IJ set an individual hearing for August 20, 2007.  (Dkt. #9 at L223, L231).  This hearing was subsequently reset for September 24, 2007.  (Dkt. #7, Ex. A).

On September 12, 2007, petitioner filed the instant Petition for Writ of Habeas Corpus, challenging his continued detention.  (Dkt. #1).

On September 24, 2007, petitioner appeared with counsel at his individual hearing before an IJ and withdrew his Form I-589 Application for Asylum and Withholding of Removal.  (Dkt. #7, Ex. A).  The IJ found petitioner removable as charged, and ordered him removed from the United States to Brazil.  (Dkt. #7, Ex. A).  Petitioner timely filed an appeal of the IJ's decision with the Board of Immigration Appeals ("BIA").  (Dkt. #10 at 1).  Petitioner's appeal is currently pending with the BIA.

### III.  DISCUSSION

A.  Subject Matter Jurisdiction

The REAL ID Act amended certain paragraphs of 8 U.S.C. § 1252 to preclude habeas

REPORT AND RECOMMENDATION
PAGE – 4

jurisdiction over removal orders and vested that jurisdiction solely with the courts of appeal. *See* INA § 242(a)(5); 8 U.S.C. § 1252(a)(5) ("a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal."). The REAL ID Act, however, did not eliminate habeas jurisdiction over challenges to detention that are independent of challenges to removal. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1075 (9th Cir. 2006) ("By its terms, the jurisdiction stripping provision does not apply to federal habeas corpus petitions that do not involve final orders of removal."). Because petitioner's habeas petition challenges only his continued detention rather than the merits of his removal order, this Court has jurisdiction pursuant to 28 U.S.C. § 2241 to consider petitioner's habeas petition.

       B.  <u>Petitioner's Detention is Not Indefinite</u>.

       It is undisputed that petitioner's detention is governed by Section 236(c) of the INA, which requires the Attorney General to "take into custody any alien who . . . is deportable by reason of having committed . . . [an aggravated felony] . . . when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation . . . ." INA § 236(c), 8 U.S.C. § 1226(c).

       Petitioner argues, however, that he is being indefinitely detained in violation of *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001); *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005); and *Nadarajah*, 443 F.3d 1068, and that he must be released because there is no significant likelihood that he will be removed in the reasonably foreseeable future. (Dkt. #10 at 4). Respondents argue that petitioner's detention is not indefinite and that the indefinite analysis does not apply. (Dkt. #7 at 6-7).

       *Zadvydas* concerned the indefinite detention of aliens pursuant to the post-removal-order

REPORT AND RECOMMENDATION
PAGE – 5

detention statute, INA § 241(a), 8 U.S.C. § 1231(a), following a final order of removal.  Section 241(a)(1)(A) states that "[e]xcept as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."  INA § 241(a)(1)(A), 8 U.S.C. § 1231(a)(1)(A).  The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).  During the removal period, continued detention is required.  INA § 241(a)(2), 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien.").  Under Section 241(a)(6), the Attorney General may detain an alien beyond the 90-day removal period.  8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court considered whether INA § 241(a)(6) authorizes the government "to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal."  *Zadvydas,* 533 U.S. at 682.  The petitioners in *Zadvydas* could not be removed because no country would accept them.  Thus, removal was "no longer practically attainable," and the  period of detention at issue was "indefinite" and "potentially permanent."  *Id.* at 690-91.  The Supreme Court held that INA § 241(a)(6), which permits detention of removable aliens beyond the 90-day removal period, does not permit "indefinite detention."  *Id.* at 689-697.  The Court explained that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  *Id.* at 699.

REPORT AND RECOMMENDATION
PAGE – 6

The Supreme Court further held that detention remains presumptively valid for a period of six months. *Id.* at 701. After this six-month period, an alien is eligible for conditional release upon demonstrating "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. The burden then shifts to the Government to respond with sufficient evidence to rebut that showing. *Id*. at 701. The six-month presumption "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

As noted, *Zadvydas* addressed the length of time beyond the removal period that an alien may be held in detention. Here, however, petitioner is being detained pursuant to a different statute, INA § 236(c), because his removal order is not yet final. *See* INA § 241(a)(1)(B) ("The removal period begins on the latest of the following: . . . (i) The date the order of removal becomes administratively final."). Accordingly, petitioner does not face indefinite detention, and the holding of *Zadvydas*, with respect to the length of time an alien may be held in detention, does not apply to petitioner's case at this time. *See Demore v. Kim*, 538 U.S. 510, 512, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003).

In *Kim*, a lawful permanent resident of the United States argued that his detention under INA § 236(c) violated the Due Process Clause of the Fifth Amendment because the Government had made no determination that he posed either a flight risk or a danger to society. *Id.* at 514. The Supreme Court held that mandatory detention pursuant to § 236(c) was constitutional for the brief period necessary for removal proceedings. *Kim*, 538 U.S. at 512. The Supreme Court found that "[s]uch detention necessarily serves the purpose of preventing deportable aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered

REPORT AND RECOMMENDATION
PAGE – 7

1    removed, the aliens will be successfully removed." *Id.* at 528.

2         Kim also argued unpersuasively that his detention under INA § 236(c) violated due

3    process under *Zadvydas*. The Supreme Court distinguished *Zadvydas*, pointing out that

4    "*Zadvydas* is materially different from the present case in two respects. First, in *Zadvydas*, the

5    aliens challenging their detention following final orders of deportation were ones for whom

6    removal was 'no longer practically attainable.'" *Id.* at 527. Second, "[w]hile the period of

7    detention at issue in *Zadvydas* was 'indefinite' and 'potentially permanent,' . . . the detention

8    here is of a much shorter duration." *Id.* at 528. "*Zadvydas* distinguished the statutory provision

9    it was there considering from § 1226 on these very grounds, noting that 'post-removal-period

10   detention, *unlike detention pending a determination of removability* . . ., has no obvious

11   termination point." *Id.* at 529 (quoting *Zadvydas*, 533 U.S. at 697). The Supreme Court

12   concluded that *Zadvydas* was not controlling and that a brief detention under INA § 236(c) to

13   complete removal proceedings does not violate due process. *Kim*, 538 U.S. at 531.

14

15        The reasons for petitioner's detention in this case also differ from those in *Tijani*. In

16   *Tijani*, the petitioner, detained pursuant to INA § 236(c), sought by habeas proceedings to

17   compel a bond hearing. *Tijani*, 430 F.3d at 1242. At the time of the Ninth Circuit's decision,

18   Tijani had been detained for two years and eight months pending removal proceedings. *Tijani*,

19   430 F.3d at 1246 (Tashima, J., concurring) (noting that Tijani's detention during his

20   administrative proceedings lasted twenty months, with one year of continued detention during

21   judicial appeal).

22        In a brief (three paragraph) opinion, the Ninth Circuit stated that "it is constitutionally

23   doubtful that Congress may authorize imprisonment of this duration for lawfully admitted

24   resident aliens who are subject to removal." *Tijani*, 430 F.3d at 1242. Nevertheless, to avoid

25

26   REPORT AND RECOMMENDATION
     PAGE – 8

deciding the constitutional issue, the court construed § 236(c) as applying only in "expedited" removal proceedings. *Id.* The Ninth Circuit concluded that "[t]wo years and eight months of process is not expeditious," and ordered an Immigration Judge to release the petitioner "unless the government establishes that he is a flight risk or will be a danger to the community." *Id.* In a concurring opinion, Judge Tashima concluded that Tijani was entitled to be released from detention pending the completion of his removal proceedings because the sheer length of his detention had become unreasonable. *See id.* at 1249-50 (Tashima, J., concurring) (citing *Zadvydas*, 533 U.S. at 690; *Demore v. Kim*, 538 U.S. 510, 527, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003).

Here, however, unlike Tijani whose twenty month administrative process was clearly unreasonable, petitioner has been detained pending administrative proceedings for just eleven months. Moreover, there is no indication that there has been any unreasonable delay by the Government in pursuing or completing removal proceedings. Rather, it appears from the Administrative Record that petitioner's own administrative motions and continuances are at least partially responsible for the length of proceedings. Continuances granted solely for petitioner's benefit should not count against the *Tijani* standard. *See Demore*, 538 U.S. at 530-31 (petitioner's request for continuance justified the "somewhat longer than average" removal proceedings).

Petitioner next contends that he is entitled to be released under *Nadarajah*, 443 F.3d at 1079-80, because there is no significant likelihood of removal in the reasonably foreseeable future. (Dkt. #1 at 2). In *Nadarajah*, the petitioner, detained pursuant to the "general

REPORT AND RECOMMENDATION
PAGE – 9

immigration statutes," INA § 235(b)(1)(B)(ii)[1] and 235(b)(2)(A)[2], challenged the agency's denial of parole. *Id.* at 1075-76. The Immigration Judge had already granted the petitioner deferral of removal under the CAT (which was unchallenged), and asylum (which had been affirmed by the BIA). Despite having prevailed on his application for relief at every administrative level, Nadarajah had been detained for five years pending a determination of removability. Relying on the Supreme Court's analysis in *Zadvydas*, the Ninth Circuit held that "the general immigration detention statutes do not authorize the Attorney General to incarcerate detainees for an indefinite period." *Id.* at 1076 (*citing Zadvydas*, 533 U.S. at 678). The Ninth Circuit concluded that there was no likelihood of removal in the reasonably foreseeable future in light of the fact that the petitioner had been awarded asylum twice and protection under the CAT. *Id.* at 1080-81.

In *Nadarajah*, however, there was a strong indication that removal was not practically attainable because Nadarajah had been granted deferral of removal under the CAT (which was unchallenged) and asylum (which had been affirmed by the BIA). Thus, there was no evidence that he would be removed in the reasonably foreseeable future. Here, by contrast, petitioner has not prevailed at the administrative level but has been found removable by an Immigration Judge. Moreover, the basis for petitioner's detention is not due to the Attorney General's delay, but to

_____

[1]"If the [asylum] officer determines at the time of the interview [upon arrival in the United States] that an alien has a credible fear of persecution . . ., the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii).

[2]"[I]n the case of an alien who is an application for admission, if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under 8 U.S.C. § 1229a." 8 U.S.C. § 1225(b)(2)(A).

REPORT AND RECOMMENDATION
PAGE – 10

his appeal with the BIA.  In light of these facts, petitioner has not demonstrated that there is no significant likelihood of removal in the reasonably foreseeable future.  Accordingly, the habeas petition should be denied as petitioner's detention is lawful and authorized by statute.

IV.  CONCLUSION

For the foregoing reasons, I recommend that respondents' motion to dismiss be granted, and that this action be dismissed with prejudice.  A proposed Order accompanies this Report and Recommendation.

DATED this 14th day of January, 2008.

_James P. Donohue_

_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE – 11